In the Matter of the Application of SILAS MASON COMPANY, Appellant, for a Peremptory Order of Mandamus against CHARLES W. BERRY, as Comptroller of the City of New York, and Others, Respondents.

First Department, January 10, 1930.

*Harold J. Cloutman* of counsel [*William G. Fullen* with him on the brief; *Baar, Bennett & Fullen,* attorneys], for the appellant.

*Milton I. Hauser* of counsel [*Joseph T. Flynn* and *J. Joseph Lilly* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* attorney], for the respondents.

McAvoy, J. The court denied petitioner's application for a peremptory mandamus order, directing the comptroller to issue a warrant to petitioner for the sum of approximately $24,000 with interest.

The petitioner Silas B. Mason had a contract with the city for excavating for subway work on Fort Washington avenue from One Hundred and Eighty-seventh street to Overlook Terrace. All the work required by the contract has been performed and completed. A certificate of completion, required by the contract, to be made by the board of transportation, was transmitted to the comptroller with a voucher for the precise sum due. The comptroller has refused to make the payment, and this proceeding was brought.

The contract is admitted; proper performance and completion of the obligation thereunder are conceded, but the reason for refusing to make the payment of the amount called for by the voucher, as determined and certified by the board of transportation and chief engineer thereof, is that some of the work of excavation admitted to have been done in the quantity determined by the engineer, was, in the opinion of the comptroller, improperly classified as " shaft " excavation, when, according to his interpretation, it should have been classified under " tunnel " excavation.

The only question here is the construction of the language of the specifications and the contract, the drawings, and plans in respect of the distinction between " shaft " and " tunnel " excavation, and the creation of the basis for the payment of unit prices for these specific types of work.

The contract provides for the construction of an elevator and ventilating shaft on private property, near Overlook Terrace, alongside the main shaft, and entirely above the roof of the tunnel. In this shaft is a small triangular chamber which is to be a part of the permanent shaft, to be used in installing fans and ventilating equipment. The classification of the fan chamber, and payment therefor, is the basis of the dispute.

The contractor claims it is " shaft " excavation; the board of transportation classifies it and certifies it as such for payment, but the comptroller contends that its classification should be under " tunnel " excavation.

The difference in price is that between ten dollars and thirty cents per cubic yard for " tunnel " excavation, and thirty-nine dollars and ninety cents per cubic yard for shaft excavation.

The contract provides that the engineer shall in all cases determine the classification, amount, quantity, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under the contract. His determination and estimate is to be final and conclusive upon the contractor, and in case any question arises under the contract, a determination and estimate by him is to be a condition precedent to the right of the contractor to receive any money under the contract.

The specifications with respect to the item in dispute read: " Shaft excavation will be deemed to include all excavation for the vertical elevator and ventilation shaft (indicated on the drawings) in private property adjacent to Overlook Terrace extending from the roof of the main tunnel to the street surface. All other excavation required by this contract shall be done by tunneling, except as specified for trench excavation."

The city contends that it is entitled to contest the claim of payment through mandamus order by reason of the so-called estoppel clause in the contract, which provides that the city shall not be precluded or estopped by any return or certificate made by the board of transportation, the engineer or other officer, under any provisions of the contract, from at any time, either before or after the final completion of the work and payment therefor, pursuant to such certificate showing the true and correct classification, amount, quality and character of the work done and materials furnished by the contractor, etc., contesting such claims.

Two diagrams in connection with the contract showing the lines of payment for " shaft " excavation and " tunnel " excavation are inconsistent in that one shows the specific item as within the diagram of payment lines for " shaft " excavations, and the other shows the area in question in line of payment for " tunnel " excavation.

The contract and specification must be consulted to determine the proper interpretation of the drawings, and such interpretation must be made by the party in whom that power is vested by the law and the contract, in this case the chief engineer of the board of transportation.

The comptroller does not contend that the excavation was not

performed; he does not dispute the quality of the excavation, but contends that there is an improper classification by the chief engineer of the board of transportation.

This raises a pure question of law to be determined by construction of the contract, specifications and drawings to determine whether or not the excavation in question was within the classification of "shaft" excavation or "tunnel" excavation. Any construction of a contract, specifications and drawings is purely a law point for the court's ruling.

There is nothing in the affidavits of the comptroller showing that this specific area was within the "tunnel" excavation area. What he states are merely conclusions of law, or his opinion with respect to how the matter should be classified.

If it had been intended to provide under the agreement that the city was to be bound by the certificate of the chief engineer and the board of transportation, but that such certificate could be nullified by objections thereafter interposed by any other officer or department, such intention should have been, and doubtless would have been set forth in the provisions of this contract, for they are meticulously exact in all other respects. The contractor should have been informed by the terms of the contract that, while the contract prevented him from demanding compensation until after the said officers should make certain certificates, the city's agreement was only to pay within thirty days after making the certificates, in case the defendant or some other department or officer of the city should not object. There is no tribunal erected in the contract vesting the comptroller with power to determine whether there had been performance, or to decide whether the work had been done to the satisfaction of the board of transportation. In case the city's contention were adopted the terms in the contract that the board should itself decide whether it was in fact satisfied would go for naught, and someone else would decide the matter for such board.

This provision of estoppel was not intended to trespass on the provisions as to how performance shall be ascertained and bindingly declared. The provision does allow the city to show the true and correct amount and character of the work done and materials furnished. Unless it shows error the city cannot prevent a contractor from receiving payment for what it has earned under a contract when the certificates have been given. It may prevent a recovery for a greater amount than the work was worth. In this case the defendant had to show by some facts that the precise nature of the work was not as it appears to be, "shaft" excavation, but that it was actually "tunnel" excavation, and the contract,

specifications and drawings properly construed veer against the city version of their purport.

The order appealed from should, therefore, be reversed, with ten dollars costs and disbursements, and the motion granted, with fifty dollars costs.

MERRELL and PROSKAUER, JJ., concur; DOWLING, P. J., and FINCH, J., dissent.

Order reversed, with ten dollars costs and disbursements, and motion granted, with fifty dollars costs.